Good morning, your honors. John Youngquist for the estate of Shapiro. I will reserve two minutes for rebuttal. Mr. Youngquist, if you could talk right into the mic, we'd appreciate it. Thank you. Thank you. This case involves the venerable line of authorities going all the way back to the Ithaca Trust case in the United States Supreme Court with respect to the estate tax determination of both asset value and liability value in determining the taxable estate. As was said by this court in Propstra and also in the estate of McClatchy, which Judge Tashima, I believe, wrote the majority opinion in, the tax is a tax on the transfer of assets at death, and therefore the valuation has to be as of the time of death. Now, this is a liability case. This is not an asset case. Sometimes that value cannot be ascertained until after death, though. It's quite possible that by reason of the nature of the asset were claims that a valuation cannot be accurately made at the day of death. But the regulations establish that that type of claim can be estimated in the estate tax return. And the jurisprudence that we rely on, at least three circuit court cases that are directly in point, say that even in a disputed claim, which this was, the date of death is still the time to determine or estimate and take the deduction as of that time. Now, how could you ever estimate what the value of this claim was? You never know what a court will do with a case. And the only way to find out what a case is worth is whether the jury comes in or the parties settle the case. And then you could take care of the date of death by either using accrued or deferred interest. That would be due the government or the taxpayer to the date of death. Well, there is that line of argument, Your Honor. But we, the estate, basically relied on the estate of Smith and the Fifth Circuit, which covered all of that. And although it may be counterintuitive in a situation where ultimately the case is settled, the estate of Smith was right on the money with respect to the fact that there was a case in litigation at the time. And there were allegations, and it was being approached and being tried. And it said that, no, you cannot take into account post-death events on how it all turns out. You have to make that estimation. And it says that you can do it by expert testimony. What realtor could put a price on a piece of real estate that's subject to a lawsuit, which no one knows how it's going to resolve itself? What realtor can give any opinion that's merely anything but speculative? Well, not speculative, Your Honor. I mean, again, courts recognize, particularly estate of Smith, it says it quite clearly that attorneys are perfectly capable of being expert witnesses in a case such as this to predict or say as of the date of death what the case was worth. And in this case, clearly, there was no collusion involved here. This was a hard-fought battle that was going on at the time of Bernard's death. And certainly the estate was obliged to defend the case, and it did over the period of time. Well, let me ask you. Go ahead, Judge. Finish your line. Suppose I were to ask you what difference the lis pendens had on the value at all. The property is still worth the same thing except it's subject to a lien of the lis pendens. Right. And as I'm sure you could do in Nevada, I'm aware you could do it in several other states. I've done it myself. You could post a bond if it's agreed to by the parties or go to court and have the court require the amount of the bond and free the real estate from the lien of the lis pendens. So how does the lis pendens affect the value of the property at all? Simply, again, it's a matter of applying the discounts for the question as of the date of death as to what's going to happen with respect to this litigation. And it's done all the time. And who can tell what's going to happen in this litigation? That is depending upon. That doesn't mean your deduction is zero. It's just that you have a difficult valuation problem. That's exactly the point. Mr. Youngquist, before you get to valuation, don't you have to first cross the threshold of whether or not you're entitled to a deduction at all under 2053? Yes. That's, of course, the government's and the district court's approach here. The other thing, you know, subsidiary to that question, and as I understand it, the lower court held that you're not entitled to deduction because you don't meet the terms of the statute. Namely, there was no consideration given for the promise or for the agreement. And on that question, you may be collaterally stopped, right? Well, there's no question. That is a threshold issue, Your Honor. And my answer to that is that if you take a look at what the estate was faced with at the death of Bernard, this litigation had very viable claims that were not based upon simple contract. I mean, that's the district court's error there, I think, is taking a very narrow view of the cohabitation law, the Mischoff marriage law in Nevada. And it was a very serious situation. And my contention is that this is basically or was at that time a property rights determination. It wasn't based merely on – Well, what do you say, that the property rights arose from something other than contract? Oh, yes. I mean, well, the contract aspect, Your Honor, is certainly it was – if there was a contract that they were looking at at that time, it would have to be implied by the conduct of Bernard. The conduct over 22 years of cohabitation and whatever she was contending was the expectations and promises and mutual support during those years. And if you look at Mischoff, you look at Hay, and you look at what Chief Justice Springer of the Nevada Supreme Court says in describing the Mischoff marriage doctrine, it does establish rights, property rights. But she was claiming 50% of the property, and that was basically what they were trying to defend against. And then the district judge said, as a matter of law, whatever she provided to this relationship could not be considered consideration, which seems to me to be totally contrary to modern cohabitation law these days. That's exactly right, Your Honor. I notice you wanted to reserve two minutes, you said. I see you're up against it. Good morning. Good morning. May it please the Court, my name is Carol Barthel. I represent the United States in this action. The district court correctly held that Ms. Chinshark's claim was not deductible from the gross estate under Section 2553A. Under the theory that she gave no consideration for the claim? Precisely. Well, how can that be when under Nevada law this is a bona fide cause of action which will uphold a jury verdict and result in a judgment? Mr. the estate and its reply brief makes much of this Mischoff marriage concept, which appears only in the Nevada cases in a single justice dissent. In the Gilbert case, the Gilbert majority, in fact, repudiates that description and says that absent an express or implied agreement to the contrary, no quasi-marital property rights accrue as a result of cohabitation. Well, maybe not marital rights, but there's a two people who are not married who are cohabitating can agree. Can they not? Or do you claim there's no such thing under Nevada law that one of them will support the other for the rest of his, her life? They can agree. They can contract. But it has to be a contract for which there is consideration. Okay. That's where the part I have a problem with what the district judge did. The district judge said that there's no evidence that Chinshark ever contributed anything other than love, support and management of Shapiro's household to the relationship. These factors do not provide for sufficient consideration. That seems to me to be totally contrary to modern matrimonial law. Well, A, state law does not govern this. Federal law does. Be that as it may, this is the linchpin of his decision. And B, she herself acknowledged that she did not give her domestic services in order to obtain support. She did it out of love and affection. We did not have a contract. Admittedly, we do not have a contract. Why do you say? Admitted by whom? Admitted by Ms. Chinshark and admitted by Mr. Shapiro. Didn't she sue for breach of contract? She did later, but it was based on this promise. Well, I mean, she didn't admit that there's no contract. She said they did have a contract and was suing for breach of contract. And Mr. Chinshark, Mr. Shapiro and afterwards his estate argued that there had been no contract. There had been no. Well, he's contesting it. I understand that. But that's why you have a contested claim. You have one party claiming there's a contract, another one claiming that there's not. You have a judge saying there can't possibly as a matter of law be consideration in this, which is just flat wrong. Well, let me know what's your answer. There had been no consideration. And, in fact, Mr. Scow, who is one of the co-representing the estate in a letter in 1998, an opinion letter to Mr. Shapiro, informed Mr. Shapiro that Chinshark has no claim against him. This appears at Part 2 of the case. I'm not saying you're not contesting the claim. She cannot make no legal or bona fide claim for any of your property any more than you can make a claim for any of her property. I think we're talking past each other. The issue is not whether they agree they have a, whether she's got a valid claim or whether she's going to win. The question is, does she have a claim? She does not have a claim. She admitted it herself. If she admitted it herself, she would have dismissed her lawsuit. She was angry with the court. Instead of dismissing her lawsuit, she took it to a jury. This was a claim that was, for the purpose of Federal law, we're talking about a promise that has to be supported by adequate and full consideration in money and money's worth, or money's worth. She did not provide adequate consideration in money or money's worth for any property rights from the estate. Now, it's your position that that's a Federal question, right? It is a Federal question, Your Honor. That being your position, what is the effect of the state court judgment in the case between Shapiro and? Well, it more or less confirms that there wasn't a contract with money or money's worth. It's further evidence, but it's not determining. It doesn't have an estoppel effect, does it? The arguments that were made by the estate would have an estoppel effect, but the Court's decision accepting those arguments, except to the extent that that reinforces the estoppel effect wouldn't have an effect. Well, two things. The position the estate took during the litigation is merely adversarial posture that they're taking for that litigation. But you never questioned the bona fides of this settlement. You acknowledge the settlement that they made with the lady was at arm's length, do you not? We don't need to get to that, Your Honor, because it is — Well, no. You're not answering my question. Well, Mr. Scow, himself, has said that it — You want to answer the question? The question is, did the government ever question the bona fides, the arm's-length settlement that was made between the Shapiro estate and this — and the lady? We do note that Mr. Scow said that it would be a nice gesture to Mr. Shapiro to make some arrangements for Ms. Tentai. You think they gave her over a million dollars for a gesture? Is that the government's position? We cannot know their reasoning, Your Honor. We don't know. Did you allow any deduction in the estate for the settlement? No, Your Honor, because it was based on a promise that was not supported by full and adequate consideration. If it were an allowable deduction, we believe that because it was in contention, the value of it would — could not be determined as of the date of death, but later events would have to occur. We think that the probstra exceptions for such events would kick in. But we do not believe that this is a deductible claim. I think that we're exposed, and we have a conference, of course, on this matter. But for purposes of litigation, suppose we determine that the district judge's determination that there was no fair and adequate consideration sufficient to support a contract was in error, and we determine there was consideration, therefore, that the settlement for over the million dollars, whatever it was, is deductible from the gross estate, gross value of the estate. Where do we go then? The appellant claims that there's a valuation problem. Suppose we say that that's a legitimate deduction from the gross estate. Where do we go then as to value of that as of the date of death? Because we didn't know what it was going to be until a jury came in or they settled the case. What's your backup argument? If it were a deductible claim, we believe that probstra's recognition that where you have a disputed and uncertain claim at the date of death, which this most certainly was, it was, as the Court has noted, disputed. Then you consider past death events. The government has always believed and its new regulations state that you do consider these events and that you wouldn't ever have a deduction for more than you paid on the claim. So let me just follow up and make sure I understand. I think Judge Cowen asked a very important question. If we were to conclude that the district judge was just made an error of law in concluding that there was no consideration here as a matter of law, that there was at least some consideration. She didn't give money, but she gave money's worth, you know, services of some variety, whatever it was. Then it's your view that that's not the end of the matter. The most that the deduction would be would be whatever the settlement was. Yes. And with respect to the lease pendents matter, that is merely security for the claim.   Wait a minute. Of course, that's the question the district court never answered. It never got there, right? In other words, the value of the claim. That's correct. So if we reach a position that Judge Silverman just alluded to, the thing we do, shouldn't we do is just remand the district court to determine the value of the claim? If the court determined it was deductible, but I don't see how, if you go back. That's the premise of his questioning. But it is possible to value this claim as of the date of death, isn't it? Not for a sum certain. It was highly disputed at date of death. I don't see why not. Under Probstra, because she didn't ask for a specific amount. Her claims. I thought she wanted half the estate. No, she was just looking for. Why can't they get a lawyer who's familiar with these kind of claims and says, I see this. The estate didn't exist when she brought the suit. I see these claims all the time. A lawyer might say, gee, you know, I've handled these kind of claims in Nevada, and I'm aware of what happens when a girlfriend of 22 years sues a millionaire, and this is the likely result. In Nevada, if a girlfriend of 22 years sues a millionaire, she doesn't win unless she has participated in his business. Well, that may be your view, but I'm saying. This is Mischoff. No, not necessarily. No, I'm not sure that's true. But, I mean, if you, in terms of valuing the claim, if they get a domestic relations expert who said this is what I think this claim is worth, why wouldn't that be admissible evidence? It's still not a sum certain. An estimate of what the amount is worth is exactly not. Okay. I see. We're out of time. Well, what you have to do is, you know, I just received it. Send it back to the district court, you know, and conduct discovery and hire an expert, you know, and see what determination district court comes to as to the valuation on the date of death and whether that's supported by the evidence, right? I don't know the answer to that. You may have a view and I may have a view, but we have no idea what it's going to be. Okay. Is that right? I expect so, Your Honor. Okay. Thank you, Mr. Miller. Thank you. Mr. Youngquist, I think you've got the last word. Well, I think maybe the court in its questions has the last word. At the bare minimum, certainly they should be allowed to deduct the million dollars, what they paid. Assume without acknowledging that the court will say that there's fair consideration for her claim. Right. Then the $64 question is how do you value that claim? And your position is you have to value it with a lispedance, and the government's position is going to be that that doesn't affect the value of the claim one bit, that you still get whatever you settled with her and not a dime more. Well, no, no, that's not our position. Our position is, as I believe Judge Silverman indicated, that what you do is you have expert testimony. You have an attorney or one or more attorneys who have handled this type of case in Nevada and look at the facts that were known as of the date of death and comes up with an expert opinion. Now, it may be accepted or not accepted by a jury. The government claimed a jury trial in this case for some reason. But at the minimum, the case needs to be remanded if the court does find that there is consideration under Nevada law here that would be recognized and with instructions to the lower court as to, you know, what evidence can be received on the valuation. But this is right from the get-go. This was the state's approach to this case, that we would have an expert opinion offered in evidence as to valuation, and it would be accepted or rejected. Very instructive is what happened in the estate of Smith when it was remanded. And it went back to the tax court, and one side did put in expert testimony. The other side put in nothing. And the lower court then decided it based upon the expert testimony that was given. Well, you obviously took a deduction for the value of the claim, right? I mean, that's why we're here. Yes. It was not allowed. It was not allowed. So you had, I assume, some basis for coming, you know, to that figure. That's right. I'm not going to ask what it is now. You may want to refine it, but obviously you think you have a way of reaching. Certainly the figure was more than the $1 million in settlement, so that ultimately I would think we would at least be entitled to the $1 million. But you believe you have a way of estimating present value as of the date of death. Absolutely. Okay. Thank you very much. Very interesting case, Ms. Parthal. Mr. Junquist, thank you. The case has started. You just submitted it.
judges: Cowen, Tashima, Silverman